[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 15, 2007
THOMAS K. KAHN
CLERK

_____

No. 07-10472
Non-Argument Calendar

_____

D. C. Docket No. 94-00124-CR-4

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DARON ANTON SMITH, a.k.a. Twin,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

**(August 15, 2007)**

Before BIRCH, BLACK and MARCUS, Circuit Judges.

PER CURIAM:

Daron Anton Smith appeals his 24-month sentence, which the district court

imposed in connection with the revocation of his supervised release. On appeal, Smith argues that his sentence is not reasonable because it is greater than necessary and it subverts the goals of the Sentencing Reform Act. Specifically, Smith argues that the court made its sentencing decision without adequately weighing the § 3553(a) mitigating factors, and that, consequently, his resulting 24-month sentence is unreasonable. Smith also contends that the court erred in making an upward departure in sentencing him. Upon review, we AFFIRM.

## I. FACTS

In 1994, Smith pled guilty to one count of possession of cocaine with the intent to distribute, in violation of 18 U.S.C. § 846, and one count of possession of a firearm during a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1). The district court engaged in a downward departure and sentenced Smith to 87 months of prison for the drug possession count and 60 months of prison for the firearm count, with the sentences to run consecutively. The district court also subjected Smith to a supervised release period of five years. Under the terms of his supervised release, Smith was prohibited from the excessive use of alcohol and the use of any controlled substance.

Smith served his sentence, was released from prison, and commenced his period of supervised release, in 2005. In October 2005, Smith's probation officer

submitted a request for a modification of the terms of his supervised release, so as to require Smith's participation in a treatment program for drug and alcohol abuse. In November 2005, Smith's probation officer again requested a modification of the terms of supervised release, this time because Smith had refused to cooperate with the court-mandated substance abuse program. In July 2006, the probation officer filed a third request for modification of the terms of Smith's supervised release, because Smith had been cited for driving with a suspended license.

In October 2006, Smith's urine sample tested positive for marijuana use. He later signed a written admission that he had used marijuana on 11 October 2006. In December 2006, Smith's probation officer submitted a fourth filing to the district court, stating that Smith had admitted the use of marijuana and requesting a revocation of Smith's supervised release.

At the preliminary revocation hearing, the probation officer informed the district court that Smith had attempted to flee when the United States marshals tried to arrest him on 21 December 2006. The arresting officer testified that he had sought to arrest Smith, but that Smith had "floored it" and tried to leave the parking lot. R3-54 at 5. The officers had attempted to block Smith's vehicle in with their vehicles, but Smith had put his car into reverse and "backed into" one of the vehicles. Id. at 5-6. The officer testified that Smith had then forcefully resisted

the officers as they tried to detain him, and that they had been forced to use a taser on Smith in an effort to subdue him. The magistrate judge found probable cause as to the supervised release violation, and ordered Smith detained until his full hearing.

The district court held a revocation hearing in January 2007. The court commenced the hearing by stating its view that Smith was a "hopeless case" and that his record was "miserable." R4-55 at 5. The court then asked Smith's counsel for some further explanation as to the events that had transpired in connection with the December 2006 arrest.

Smith's counsel acknowledged his client's marijuana use. However, his counsel requested that the district court take into consideration that Smith's father had recently passed away. He indicated that the circumstances surrounding his arrest, including his attempt to flee by colliding with a U.S. Marshall's car, were manifestations of his excessive grief at the death of his father. Smith's counsel also pointed out that Smith had four children, and that he was meeting his child support obligations. He also stated that Smith had been working steadily since his release.

Smith personally addressed the court to offer his explanation regarding his conduct at the December arrest. Smith stated that his collision with the officer's

4

car while attempting to flee "wasn't really a major collision. I just like tapped the bumper of the car, sir." Id. at 12. Smith stated that he had been trying to pick up his paycheck, so he could help pay for the funeral of his father, who had passed away that week. Smith reiterated that he had been steadily employed, had been paying child support, and had made an effort to rejoin society, even if it was not always a perfect effort.

Smith's probation officer then testified that he had done everything possible to try and get Smith to comply with the terms of his supervised release, from community service to substance abuse treatment, but that nothing had seemed to work. The probation officer challenged Smith's contention that his attempt to flee the officers during his December arrest was an unusual, one-time occurrence; rather, the officer reminded the court that Smith had similarly attempted to flee law enforcement, by jumping out of a window, during his initial arrest in 1994. The officer also stated that in fleeing from the officers in his vehicle in December 2006, Smith had placed the public in danger.

The district court observed that this was Smith's fourth violation of supervised release, and its previous attempts at getting Smith to comply with his supervised release had failed. The court stated that Smith may not be a "hopeless" case, as he was a "reasonably intelligent man who can hold a job," but that his

5

positive endeavors had been outweighed by his probation violations and his attempt to evade arrest, which unnecessarily jeopardized the lives of others. Id. at 18. The court stated that Smith was apparently incapable of "accept[ing] responsibility." Id. at 19. The court then stated that the "only result that [the court could] see" was to revoke Smith's supervised release and sentence him to 24 months' imprisonment. Id.

The court acknowledged that a 24-month sentence was an upward departure, but that it was based upon Smith's actions during the arrest and the downward departure he had received at his original sentencing. In doing so, the court stated that it had "considered the policies and the Sentencing Commission requirements of Chapter 7 and the policy statements relating to the sentences." Id. This appeal followed.

## II. DISCUSSION

Smith makes two arguments on appeal. First, he contends that his sentence is unreasonable because the district court failed to adequately consider the § 3553(a) factors. Specifically, Smith claims that the court's statement at the probation revocation hearing that his case was "hopeless," R4-55 at 5, suggests that the court had made its sentencing decision prior to considering the § 3553(a) mitigating factors that were raised at the hearing–namely, the fact that his conduct

6

was partially attributable to his emotional distress following the death of his father; the fact that he was paying his child support obligations and working regularly; and the fact that he was making a sincere effort to rejoin society. Smith contends that the court's failure to adequately consider these § 3553(a) factors demonstrates that his sentence is unreasonable. As a second argument, Smith claims that the court abused its discretion by upwardly departure in sentencing him. We address each contention in turn.

Sentences imposed for violation of supervised release under an advisory guidelines system are reviewed for reasonableness. United States v. Sweeting, 437 F.3d 1105, 1106-07 (11th Cir. 2006) (per curiam). "Under 18 U.S.C. § 3583(e), a district court may, upon finding by a preponderance of the evidence that a defendant has violated a condition of supervised release, revoke the term of supervised release and impose a term of imprisonment after considering certain factors set forth in 18 U.S.C. § 3553(a)." Sweeting, 437 F.3d at 1107. Those factors include: (1) the nature and circumstances of the offense; (2) the history and characteristics of the defendant; (3) the need for the sentence imposed to provide adequate deterrence, protect the public, and provide the defendant with needed medical care or correctional treatment; (4) the pertinent Sentencing Commission policy statements; and (5) the need to avoid unwarranted sentencing disparities.

See 18 U.S.C. § 3553(a).

The court need not, however, explicitly consider every single § 3553(a) factor in order for the sentence to be reasonable. See United States v. Scott, 426 F.3d 1324, 1329 (11th Cir. 2005). Rather, "an acknowledgment by the court that it has considered the defendant's arguments and the factors in section 3553(a)" will suffice. United States v. Talley, 431 F.3d 784, 786 (11th Cir. 2005) (per curiam). In determining if the court has adequately considered the defendant's arguments and the § 3553(a) factors, we can look to the district court's statements over the entire sentencing hearing. See United States v. Williams, 435 F.3d 1350, 1355 (11th Cir. 2006) (per curiam).

In this case, the district court's sentence did reflect consideration of several of § 3553(a)'s relevant factors. The court considered Smith's inability to comply with the terms of his supervised release despite numerous attempts by the court and his probation officer to keep him in compliance. The court also noted that during Smith's most recent arrest, he had attempted to flee from police, thereby endangering the lives of numerous persons. The court sentenced Smith to 24 months of imprisonment after stating that it had explicitly considered the policy statements of Chapter 7. See R4-55 at 19 ("I have considered the policies and the Sentencing Commission requirements of Chapter 7 and the policy statements

8

relating to sentences."). Because the court considered Smith's particular history and characteristics, the nature of the offense, the goal of protecting the public, and the Chapter 7 policy statements, we conclude that the sentence was reasonable.

Smith next argues that the district court's upward departure from the guidelines was excessive. We review a district court's decision to exceed the advisory sentencing range in Chapter 7 of the Sentencing Guidelines for an abuse of discretion. United States v. Silva, 443 F.3d 795, 798 (11th Cir. 2006) (per curiam).

Chapter 7 of the Sentencing Guidelines governs violations of supervised release, and it contains policy statements regarding such violations. See U.S.S.G. ch.7, pt. A(3)(a). We have indicated that the policy statements of Chapter 7 are advisory and not binding. Silva, 443 F.3d at 799. However, the district court must consider them in imposing a sentence. United States v. Brown, 224 F.3d 1237, 1242 (11th Cir. 2000). Chapter 7 provides for a list of recommended ranges of imprisonment that are applicable upon revocation of supervised release. See U.S.S.G. § 7B1.4, p.s. Where the original sentence was the result of a downward departure, an upward departure may be warranted. Id., p.s., cmt. n.4. If the sentence imposed in revocation of supervised release is an upward departure in excess of the range, it is enough that the district court give some indication that it is

9

aware of and considered the Chapter 7 policy statements. United States v. Aguillard, 217 F.3d 1319, 1320 (11th Cir. 2000) (per curiam).

Here, the district court stated that it was departing upwardly from the guidelines range after having considered the Chapter 7 policy statements. Moreover, the court explicitly stated that one of its reasons for sentencing above the recommended range was that Smith had received a downward departure at his original sentencing hearing in 1995. The court indicated that an upward departure was appropriate based on Smith's conduct during his arrest–in which he collided with an officer's car while attempting to flee arrest and forcefully resisted being detained. Because the policy statements of Chapter 7 are advisory, and because it is clear from the record that the court was aware of and considered them in sentencing Smith, the district court did not abuse its discretion in imposing a sentence that exceeded the Guidelines range. See id.

### III. CONCLUSION

Smith has appealed his 24-month sentence, which the district court imposed in connection with the revocation of his supervised release. Having reviewed the record, we conclude that the sentence imposed was reasonable, and that the court did not abuse its discretion in upwardly departing from the recommended range. Accordingly, we **AFFIRM.**